## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY BRACEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-1385 |
| | ) | District Judge William S. Stickman |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| COREY VALENCIA, *Corrections Officer I*, | ) | Re: ECF No. 177 |
| CHRISTOPHER COLGAN, *Corrections* | ) | |
| *Officer I*, and LIEUTENANT MORRIS, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM ORDER

Plaintiff Corey Bracey ("Bracey") brings the pending Motion for Sanctions and asserts that Defendants Corey Valencia ("Valencia") and Christopher Colgan ("Colgan") and their counsel provided evasive, inaccurate, and incomplete responses to discovery requests. Bracey contends that Defendants' conduct interfered with the orderly and just resolution of this action. ECF No. 177. For the following reasons, the Court agrees and will grant the Motion for Sanctions.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The following facts derive from Bracey's Second Amended Complaint and the documents of record relevant to the pending motion. At this stage of the litigation, the facts alleged in the complaint are accepted as true, and construed in the light most favorable to Bracey. Miller v. Thompson-Walk, No. 15-1605, 2019 WL 215660, at *11 n.8 (W.D. Pa. May 17, 2019).

Bracey commenced this action for the violation of his Eighth Amendment rights at the State Correctional Institution at Greene ("SCI-Greene") on October 17, 2017, when Defendants Valencia, Colgan, and Lieutenant Morris allegedly employed unwarranted and excessive force during an escort to medical triage. ECF Nos. 1 and 107. Bracey states that due to an ongoing investigation of his complaints of abuse by Valencia and Colgan, a separation order was in place

1

as of September 8, 2017, directing both Defendants not to have any contact with Bracey. ECF No. 107 ¶¶ 19-21; ECF No. 183 at 4. On the day of the incident, Valencia and Colgan violated the order and manufactured a situation to justify the use of force. Bracey states that out of fear, he suffered a "mental health episode" when Valencia entered his cell to exchange cell property. After Bracey "blacked out and exited the cell," Valencia and other responding officers, including Colgan, "punched and applied knee strikes to Plaintiff's head" and employed capsicum spray. Bracey concedes that he bit one of the responding officers in the scuffle. Once restrained, Bracey offered no resistance, and was shackled and handcuffed with his hands behind his back. At that point, Valencia and Colgan punched Bracey repeatedly in the head and face. Id. ¶ 29.

Defendant Morris, acting in his supervisory capacity, ordered Bracey to be escorted to the medical unit for treatment. Morris directed that during the escort, Bracey was to be shackled, handcuffed, placed in a spit hood, bent over, and made to walk backwards. Bracey states that he offered no resistance, but during the escort Defendants Colgan and Valencia instructed him to stop resisting and repeatedly drove his head into the concrete floor. Defendants also repeatedly punched Bracey in the face. Later, he says, Defendants "fabricated their incident reports" stating that Bracey resisted the escort and force was necessary to gain compliance. Id. ¶¶ 30-37; see also ECF No. 177 at 2.[1]

Bracey was criminally charged in state court for assaulting officers during the initial incident. After four years, the charges were dismissed by the Court of Common Pleas for Greene County on March 28, 2022.[2] This Court has reviewed a copy of the trial court's order reflecting

---

[1] The internal investigation of this incident led to a finding that the officer assigned to film the escort "did a poor job" and "did not keep the inmate in view." ECF No. 183-3 at 2. The officer was "formally counseled" on camera procedures. Id.

[2] The criminal docket may be accessed at:
https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-30-CR-0000014-2018&dnh=4n%2Ft0%2B%2BAomHvcfVBnJ1QuA%3D%3D

President Judge Louis Dayich's conclusion that dismissal was warranted because of repeated instances of "gamesmanship" by the Pennsylvania Department of Corrections ("DOC") during routine discovery.[3] DOC's conduct impeded Bracey's ability to pursue a defense against the charges and, after several attempts to direct DOC's cooperation, Judge Dayich determined that dismissal was appropriate. Bracey alleges that Defendants and their counsel have engaged in similar conduct in the litigation of this matter.

### A. Relevant Order, Motions, and Responses

On April 5, 2021, the Court entered a case management order providing for discovery. ECF No. 141. On July 9, 2021, Assistant Attorney General Sarah Simkin, counsel for Defendants, filed a Notice stating that Valencia's and Colgan's responses to initial interrogatories were complete and had been provided to Bracey. Simkin stated that additional time was needed to obtain a verification from Defendant Morris. ECF No. 145. The Court construed the Notice as a Motion to Extend Discovery and entered an Amended Case Management Order. ECF No. 146.

The next week, Assistant Attorney General Matthew Gill entered his appearance as co-counsel on behalf of Defendants. ECF No. 147. Bracey moved to extend time to complete discovery to resolve Defendants' objections and outstanding discovery requests. ECF No. 148. The Court granted the motion and issued a second Amended Case Management Order. ECF No. 149. That same day, Bracey filed "Objections to Defendants' Discovery Notice," raising Colgan's failure to respond to certain interrogatories and Morris' failure to comply with requests for production of documents. ECF No. 151. Bracey also suggested that certain of Defendant Colgan's responses raised issues that required additional discovery. Id.

[3] A copy of the Common Pleas Court decision is attached to this Memorandum Opinion as Appendix A.

3

On October 25, 2021, Bracey filed a Motion to Compel complaining that certain responses to discovery requests were factually incorrect and otherwise incomplete. ECF No. 152. Bracey attached a copy of the challenged discovery requests and responses. Valencia's verified answers to interrogatories and responses to requests for production prepared by Attorney Simkin, are as follows:

3. Produce documentation of any discipline filed against you as a result of the October 17, 2017 incident, if any.

RESPONSE: **There are no documents response to this request as Defendant Valencia did not receive discipline as a result of this incident.**

See Valencia's Response to Request for Production of Documents, ECF No. 152-2 at 2.

18. Were you formally disciplined as a result of the incident of October 17, 2017? If yes, what was the discipline?

**ANSWER: No.**

19. If you were disciplined, and you seek to use the appeal process to challenge the legitimacy of cited violations and/or discipline? If no, why not?

**ANSWER: See Response to No. 18.**

20. If the answer to #19 is yes, what was the ultimate outcome of the appeal?

**ANSWER: See Response to No. 18.**

21. You stated to the effect that during the escort of plaintiff to the triage, he caused the escort to the ground on multiple occasions. Exactly how plaintiff forced the escort to the ground? Specifically, what did plaintiff do with specific parts of his body to force the escort to the ground? Be specific and detailed.

**ANSWER: Defendant Valencia was not part of the escort to triage and has no information about anything that might have occurred during the escort.**

See Valencia Answers to Interrogatories, ECF No. 152-1 at 2.

4

Bracey also complained that interrogatories and requests for production of documents directed at Colgan remained unanswered. ECF No. 152-4. A portion of Colgan's later produced undated verified interrogatories responses have been provided to the Court as an exhibit to the Motion for Sanctions. With relevance to the pending motion, Colgan unequivocally denied the existence of a separation order:

> 1.   You testified at a criminal proceeding October 17, 2017 incident that gives rise to this action.  Your testimony was that you were aware of a separation order that you had from plaintiff on October 17, 2017.  How were you made aware of this separation order?  i.e. when, by whom, etc.
>
> **Answer:**     **No separation order was in place between Answering Defendant and Plaintiff on October 17, 2017.**

See Colgan response to Interrogatory No. 1. ECF No. 182 at 3.

Attorney Matthew Gill filed a Response to the Motion to Compel on behalf of Defendants. ECF No. 155. In the response, Attorney Gill stated that as to separation orders: "There were none and there is nothing to produce. Relatedly, no Defendant was under the impression there was a separation order in place between them and Bracey on October 17, 2017." As to discipline against Valencia, Attorney Gill responded: "There are no documents." Id.

Three days later, Attorney Gill moved to extend time for Defendants to respond to the Motion to Compel to "review their records to ensure they make a full and complete production of documents and answers to discovery in this matter can close." ECF No. 156. The Court granted the motion on November 4, 2021, and Defendants filed a Second Response to Plaintiff's Motion to Compel on November 23, 2021. ECF No. 157. Despite being afforded additional time to investigate, Attorney Gill again represented that there was no separation order and no documents

relative to discipline. ECF No. 160 at 6. In addition, Attorney Gill moved to extend case deadlines for the filing of any motions for summary judgment and pretrial statements to permit resolution of the Motion to Compel. ECF No. 161.

Bracey filed a reply to Defendants' response to his Motion to Compel. ECF No. 164. In his reply, Bracey asked counsel to conduct a more extensive search for documents related to a separation order issued to Colgan and Valencia, including emails and staff reports, and for documents related to disciplinary proceedings against Valencia.

On December 8, 2021, this Court issued an order granting in part and denying in part the Motion to Compel. ECF No. 166. As relevant to the pending Motion for Sanctions, the Court relied on Defendants' and counsel's representations that there were no disciplinary proceedings and thus no documents to produce; and, similarly, that there was no separation order in place, and thus no documents to produce.

As required by the Amended Case Management Order, on March 1, 2022, Bracey filed a Pretrial Statement and included a Motion for Sanctions related to alleged discovery abuses. ECF No. 177. Bracey supports his Motion for Sanctions with exhibits filed at ECF Nos. 182 and 183. The exhibits include Colgan and Valencia's answers to interrogatories "under penalty of perjury," responses to requests for production of documents, and copies of documents establishing that Defendants' answers to interrogatories as to fundamental facts related to Bracey's claims are false.

The documents provided by Bracey include: (i) Colgan's testimony at the state court preliminary hearing confirming that there was a separation order in place at the time of the incident; ECF No. 182 at 5; (ii) copies of a separation order issued by the Restricted Housing Unit ("RHU") security captain a month before the incident, as well as the security captain's written statement dated January 4, 2018 (attested to as if sworn to in a court of law) that before the incident, he

personally directed Defendants Valencia and Colgan not to have any contact with Bracey, ECF No. 183 at 2-4; (iii) Valencia's written statement prepared as part of an internal DOC investigation confirming that he participated in the escort that gave rise to Bracey's claims, ECF No. 182-2; and (iv) records of disciplinary proceedings launched against Valencia arising out of the incident and the issuance of a three-day suspension, ECF No. 183.

Attorney Gill filed Defendants' response to the Motion for Sanctions. ECF No. 180. In the response, Gill states that the documents referenced by Bracey were produced during his related criminal proceedings, and that defense counsel in this civil matter was unaware of the existence of the proceedings and contradictory evidence. It is apparent to the Court (and to Bracey) that the referenced contradictory documents were provided to the Greene County District Attorney by the DOC but were omitted from production during discovery in this civil proceeding. That said, Attorney Gill states that "no intentionally false or inaccurate discovery responses have been provided to Bracey and sanctions are therefore inappropriate." ECF No. 180 at 2.

As to the existence of a separation order, Attorney Gill represented that there was no "order," only an email "message" and "it is not clear if, how or when this message was delivered to Officers Valencia and Colgan." Id. Aside from the artifice employed by counsel to distinguish between an "order" and a "message" delivering the "order", this assertion is contradicted by documents provided by Bracey, and obtained by him in the criminal proceeding. These documents include an email reflecting that the RHU security captain issued an order to RHU supervisory staff directing that as of September 8, 2017, neither Defendant was to have to "ANY contact with this inmate until cleared. No escorts, no strip search, no feeding him except under emergency circumstances." ECF No. 183 at 4. This order was communicated by the RHU Captain directly and in person to both Defendants. ECF No. 183 at 2-3. Finally, as part of disciplinary proceedings,

DOC officials determined that Valencia "disregarded an order from the RHU Commander to have no direct contact with an Inmate. Ofcr. Valencia failed to follow established protocol of policy and post orders resulting in the injury of himself, a fellow officer and an Inmate." See ECF No. 183-6. Thus, contrary to Defendants' answers to interrogatories and requests for production of documents, the evidence reflects: (1) a separation order was in place; (2) the order was directly communicated to Defendants Colgan and Valencia; (3) the order was violated on the day of the incident; and (4) there are several documents in DOC's possession reflecting the existence and communication of a separation order.

As to Bracey's request for "[d]ocuments regarding any discipline Defendant Valencia faced after the incident," ECF No. 160 at 6, Attorney Gill asserts,

> Valencia never *received* discipline; it is not contained in his personnel file or in any of the written documents counsel has reviewed. Of note, Valencia never returned to work for the DOC, his last day at work was the day of this incident. To the extent Bracey is in possession of any documents indicating discipline for Valencia was considered, that is not equivalent to 'formal discipline.' Defendants' responses are accurate.

ECF No. 180 at 3 (italics added). Yet, the documents provided to Bracey in the criminal matter and filed in support of the Motion for Sanctions reflect that despite Valencia being off work because of injuries allegedly sustained in the incident, the DOC launched a disciplinary investigation into his conduct, and the investigation led to the issuance of a suspension. The portions of the disciplinary report available for review reflect that DOC personnel called Valencia by phone and forwarded notices to him by certified mail to appear for a factfinding pre-disciplinary conference as part of a disciplinary investigation arising out of the escort and incident. ECF No. 183-2 at 2. Valencia failed to return the calls and did not respond to the notices to appear related to the investigation. ECF No. 183-6 at 2. Despite his refusal to participate in the proceedings, on August 6, 2018, Valencia received a three-day suspension for his conduct in the incident, including

his violation of a no-contact order. See ECF No. 183-7. Thus, it is apparent: (1) there were disciplinary proceedings against Valencia for his conduct during the escort at issue; (2) Valencia received written notice (at least twice) of the pendency of disciplinary proceedings against him; and, (3) there are several documents in DOC's possession evidencing the existence of disciplinary proceedings that led to the issuance of a suspension.

Finally, as to Valencia's answers to interrogatories repeatedly denying participation in the escort at issue, Attorney Gill states, "Bracey is correct that Valencia was part of the escort per Valencia's own statement made in October 2017. Bracey is also correct that Valencia's signed interrogatory response contradicted his written statement from October 2017. While this discrepancy will weigh on Valencia's credibility, and Bracey may seek to introduce it at trial, it is not sanctionable." ECF No. 180 at 3. Valencia and his counsel attribute the incorrect responses to a "fuzzy" memory. Id. at 3-4.

On March 23, 2022, the Court issued an Order scheduling a hearing on Bracey's Motion for Sanctions to be held April 27, 2022. ECF No. 187. The Court ordered Defendants to ensure the presence of Bracey by video, with counsel and Defendants to appear in person.

On motion by Defendants and for good cause shown, the Court entered an Order permitting Defendant Valencia to appear by video. ECF No. 193.

Before the hearing, Senior Deputy Attorney General Scott Bradley entered his appearance on behalf of Defendants. ECF No. 199.

**B.  Hearing**

The hearing on the Motion for Sanctions was attended by counsel and the parties. Attorneys Simkin and Gill testified about the steps each took (and failed to take) to respond to discovery

requests. In addition, counsel for Defendants called Valencia and Colgan to testify as to the propriety of their initial discovery responses.

Attorney Simkin explained that this case was reassigned to her in December 2019. It is her practice to assign newly filed cases to a civil investigator employed by the Pennsylvania Office of Attorney General to reach out to the parties for statements and to gather documents about the matter at issue. [4] ECF No. 209 at 26. In this case, the investigation request had been made by the assistant attorney general first assigned the case. Simkin sent the assigned investigator Bracey's interrogatories and requests for production to coordinate the responses. ECF No. 209 at 27-28. Simkin spoke with Valencia over the telephone and asked him the questions posed in the interrogatories. His answers were incorporated into the response to Bracey's interrogatories. However, Simkin did not speak with Colgan, the DOC, SCI-Greene staff, or any other potential witnesses. Nor did she direct or request a search for documents to confirm answers or to resolve any potential inconsistencies reflected in the pleadings to date or pending interrogatories. [5] She reviewed the prepared responses and served them on Plaintiff. ECF No. 209 at 28-36.

Simkin testified that the responses to discovery requests regarding the existence of "a separation order" are correct because a "*formal* separation order" was not in place. ECF No. 209 at 28 (emphasis added). Simkin crafts the distinction for a "formal" order on her own, and relied only on information relayed to her by the assigned civil investigator that no "formal order" was in place: "[the investigator] would have asked the Department of Corrections if a formal separation

---

[4] Defense counsel concede that civil investigators are not attorneys. ECF No. 209 at 39, 65.

[5] Simkin's lack of even fundamental inquiries about this case is evidenced by her testimony at the sanctions hearing that she was not aware of the parallel criminal proceedings in Greene County until March 2022, over two years after she was assigned to the case. ECF No. 209 at 36.

order existed. The information that she got back was that there was not. So that's what I relied upon in preparing the discovery responses." ECF No. 209 at 28-29.

Simkin also testified that the discovery responses regarding "any discipline filed against" Valencia were based on Valencia's statement to her that he was not disciplined, and her speculation of the scope of inquiry by the civil investigator: "I believe the civil investigator would have made a request of the Department of Corrections if there was any discipline. We didn't receive any. We didn't have any in our file. When I spoke to Mr. Valencia to prepare the interrogatories[,] I asked him and then his response is what I put in the interrogatories that he verified." ECF No. 209 at 32. Simkin clarified that she learned of a pre-disciplinary conference from Valencia, but this did not prompt her to inquire further: "When I spoke to Mr. Valencia and he told me that there had been a PDC, I would have known there would have been some documents about that, but I probably would not have requested them because his representation to me was that no discipline resulted." ECF No. 209 at 33.

As to Valencia's denial that he participated in the escort that is the basis of this litigation, Simkin testified that the responses to discovery were based on his representations, as verified by him. ECF No. 209 at 33. Upon recently learning of a "discrepancy" in his interrogatory answer, Simkin spoke with Valencia and prepared an affidavit for his signature acknowledging his involvement and attributing the prior incorrect response to "fuzzy" memories. ECF No. 180-3 at 2; ECF No. 209 at 34.

To explain the lapses in discovery, Simkin testified, "I don't believe I ever requested information myself personally from the Department of Corrections. I would have relied upon the civil investigator who does that, but, yes, all of those requests were made from my office to the

Department of Corrections and we based our responses on what we received from them." ECF No. 209 at 36.

On cross-examination, Bracey asked whether she recalled an interrogatory directed at Defendant Colgan that asked for the basis of his testimony in the criminal proceeding that a separation order was in place, and whether that interrogatory placed her on notice of the existence of criminal proceedings. ECF No. 209 at 38. Simkin could not recall, but conceded the interrogatory should have provided notice.[6] Id.

Attorney Gill testified that he became involved in the case when Bracey filed the Motion to Compel. He reviewed the documents that had been collected, but did not reach out to speak with Defendants, the DOC, SCI-Greene staff, or any potential witnesses to confirm the accuracy of the information provided in the responses. ECF No. 209 at 48-49, 63-66. He asked the assigned civil investigator to gather additional documents related to grievances and sexual harassment complaints lodged by Bracey against Defendants, and only spoke with DOC staff to prepare affidavits related to requested video and internal security procedures. He also directed the civil investigator to request documents reflecting a separation order, but the investigator received only a document that post-dated the incident. Like Simkin, Gill crafts a narrow definition of "separation order." He testified that none was in place until after the incident at issue. For this proposition, he relies on a "Security Review/Recommendation" prepared on November 7, 2017, and provided to the Program Review Committee "for their consideration." ECF No. 180-1 at 2. That heavily redacted document concludes with a "recommendation" that Bracey be separated from Defendants Valencia and Colgan. Gill does not explain how a "recommendation" carries the weight of a

---

[6] At a preliminary hearing relative to the criminal charges against Bracey in Greene County, Colgan was asked, "[a]nd at the time of this incident was there a no contact order and direct separation order between you and inmate Bracey?" Colgan responded, "yes there was." ECF No. 182 at 5.

"formal order" for purposes of belated discovery, but the email directive and instruction personally delivered to Defendants by RHU Captain Crumb in September 2017 do not.[7] ECF No. 209 at 48, 50-51. As to discipline, Gill accepted the Defendants' initial representations. ECF No. 209 at 47-51.

Gill testified that the documents filed in support of the Motion to Compel were produced to Bracey by the District Attorney in 2018 or 2019. ECF No. 209 at 52. Gill conceded, however, that neither the DOC nor the District Attorney had any record of what was produced to Bracey or when, and he is simply relying on the docket of the criminal matter that reflects the entry of court orders requiring production of documents. ECF No. 209 at 51-53, 54. Gill's speculation does not resolve the timing of Bracey's access to the information given Judge Dayich's finding of ongoing "gamesmanship" in discovery by the DOC during the state court criminal proceeding.

Bracey's cross-examination of Simkin and Gill addressed apparent conflicts in the documents first produced that would have alerted defense counsel to the existence of the criminal proceeding and to contradictory evidence. Neither attorney could recall additional steps taken and each confirmed that he or she relied entirely upon the Defendants' initial denials and the work of the assigned civil investigator.

To further explain discovery lapses, counsel called Valencia and Colgan to testify. Valencia appeared at the hearing of this matter by video, dressed in a white undershirt. Like his chosen attire, his demeanor reflected a lack of respect to the proceedings and to Plaintiff. Valencia denied knowing a separation order was in place and denied knowledge of any disciplinary proceedings, other than a pre-disciplinary "fact finding" he now says he attended related to his

---

[7] Nor does Gill explain the blatant discrepancies in the redacted internal investigation report produced by him on November 1, 2021, in response to the Motion to Compel. The report reflects that Valencia violated a separation order and that he was disciplined for his conduct in the incident. See ECF No. 155 at 2, and discussion *infra* at 16-17.

failure to properly handcuff Bracey.  ECF No. 209 at 71-77. He has no recollection of participating in the escort but acknowledges he had given a contrary statement in an incident report prepared on October 17, 2017, and that he filed a workers' compensation claim for the aggravation of a neck injury sustained that day. Id.

Colgan personally appeared and testified that he was unaware of a separation order, and that no one had communicated the existence of such an order to him. Colgan stated that Lieutenant Morris instructed him before the incident that during the pending investigation, he needed to be accompanied by another employee whenever he interacted with Bracey. ECF No. 209 at 82. On cross-examination, when questioned about his testimony at the criminal proceeding that he was aware of a "no contact and direct separation order," Colgan testified he could not recall his sworn testimony. ECF No. 209 at 84.

With the close of testimony, the Court inquired into the nature of sanctions Bracey sought to be imposed. Bracey asked that Defendants provide him with a copy of the documents filed on the docket of this matter because, as a prisoner lacking access to a copy machine, he filed his only copies with the Court to support his various discovery motions. Second, Bracey requested that Defendants be ordered to produce Valencia's worker's compensation file to determine whether Valencia provided other contradictory statements, and whether benefits were denied because of a finding regarding the falsity of his allegations. Third, Bracey asked that the Defendants be required to stipulate that a separation order was in place, that Valencia was disciplined, and that Valencia's claim for workers' compensation was denied because he was found to be at fault. Finally, Bracey requested $50 to compensate him for paper and mailing expenses related to discovery motions and correspondence.  ECF No. 209 at 90-92.

Attorney Scott Bradley, as counsel for Defendants, agreed that if the Court granted the Motion for Sanctions, the documents now of record should be admitted as evidence, and stipulations as to certain facts may be appropriate. ECF No. 209 at 91-93. Counsel stated his belief that Defendants answered the discovery requests to the best of their knowledge at the time, and that in his years of working with Attorney Simkin, she has proven to be a diligent lawyer. Attorney Gill is relatively new to the Attorney General's office, and Attorney Bradley stated there was nothing in his recent experience to suggest Gill acted with malicious intent or bad faith in the handling of discovery, or the motions filed in relation thereto. Id.

### C. Post-Hearing Submissions

Based on the testimony presented, the Court ordered counsel to produce for *in camera* review: (1) Valencia's workers' compensation records; (2) a copy the internal investigation report as produced to Bracey in redacted form, and (3) a copy of the unredacted investigation report. ECF No. 202. The documents were provided to the Court and give rise to additional serious concerns over Defendants' lack of candor to the Court and compliance with discovery obligations under the Federal Rules of Civil Procedure.

### 1. Workers' Compensation Documents

Defendants first declined Bracey's request to produce a copy of Valencia's workers' compensation claim materials on relevance grounds. ECF No. 154 ¶ 7. In his Motion to Compel, Bracey explained that he requested the records to support his claim that Valencia was disciplined for his conduct in the incident. ECF No. 154 ¶ 3. Attorney Gill responded that Valencia's workers' compensation records are "irrelevant and do not discuss whether the incident with Bracey on October 17, 2017, was a factor in approving or denying the benefits." See ECF No. 155 ¶ 4; ECF

No. 160 ¶ 4. Counsel also objected to production to protect Valencia's personal and medical information from disclosure. Id.

The Court denied Bracey's Motion to Compel the workers' compensation records because Valencia and counsel repeatedly represented that there were no disciplinary proceedings. Thus, the Court held that the workers' compensation records were irrelevant, and production would unduly infringe on Valencia's privacy interest in personal medical information. ECF No. 166 at 3.

In compliance with the Court's post-hearing production order, Attorney Gill filed a Notice to Court Regarding Workers' Compensation File. ECF No. 205. Gill states that but for minimal redaction for personally identifying information, the documents have been produced and hand delivered to Bracey. Counsel now concedes that despite Defendants' contrary statements to the Court and to Bracey, the workers' compensation records in fact reveal that disciplinary proceedings were commenced and that "Valencia could face discipline." Id. at 2.

The Court has reviewed the documents and agrees that the records are replete with references to the commencement of disciplinary proceedings against Valencia. ECF No. 207 (Exhibits 3 and 6).

### 2. Investigation Report

As discussed, Bracey's initial discovery requests sought the production of documents reflecting the existence of a separation order and disciplinary proceedings. Counsel represented that there was no separation order and no disciplinary proceedings, and thus no documents to produce. ECF 152-2. On November 1, 2021, in response to the Motion to Compel, Attorney Gill agreed to produce a copy of the OSII Investigation Report to Bracey "with redactions for security reasons and to protect deliberative process information." ECF No. 155 at 2. Again, he denied the existence of a separation order and disciplinary proceedings. Based on the Court's review of the

exhibits to Bracey's Motion for Sanctions and testimony at the sanctions hearing, the Court questioned the fulsomeness of Defendants' production. As a result, the Court ordered counsel to provide for *in camera* review a copy of the redacted investigation report as produced to Bracey and a complete and unredacted report for comparison. ECF No. 202.

The Court has reviewed the redacted and unredacted reports, and finds concerning and unwarranted discrepancies. ECF No. 207 (Exhibits 1 and 4). The redacted copy omits mention of Valencia's violation of an existing separation order and omits the investigator's recommendation that disciplinary charges be pursued against Valencia for misconduct that led to an unplanned use of force. Compare ECF No. 207 (Exhibit 1 at 00285-87) and ECF No. 207 (Exhibit No. 4 at 00285-87). The redacted statements reflect that Valencia disregarded an order from the RHU Commander that he have no direct contact with Bracey, and that his failure to follow this direction resulted in injury to other officers and to Bracey.  Id. By these redactions, Defendants removed the specific information that Bracey sought in discovery relative to the issuance of a no contact directive or order.

## II.   LEGAL STANDARDS

The Court must determine the propriety of sanctions under the facts alleged by Bracey, the evidence and testimony presented, the arguments offered by the parties in support and in opposition to the motion, and the post-hearing *in camera* review of redacted documents. If sanctions are to be imposed, the Court must also determine what sanction to impose, under what authority, and against whom. To that end, there are four sources of authority that could apply to the pending Motion for Sanctions. Each is reviewed briefly.

### A.  28 U.S.C. § 1927

Title 28 Section 1927 permits imposing sanctions on counsel as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "In order to impose sanctions pursuant to § 1927 there must be a finding that an attorney (1) multiplied proceedings, (2) in an unreasonable and vexatious manner, (3) increasing the cost of the proceedings, and (4) that it did so in bad faith or by intentional conduct." Younes v. 7-Eleven, 312 F.R.D. 692, 702 (D.N.J. 2015) (citing In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 101 (3d Cir. 2008)). "[S]anctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment or well-intentioned zeal. Bad faith or intentional misconduct must be shown by clear and convincing evidence." Younes, 312 F.R.D. at 702. As stated at the sanctions hearing, the Court finds that the record presents deeply concerning conduct but does not reflect that counsel acted in bad faith or intentionally to mislead the Court or Bracey.  Instead, the conduct appears to result from bad judgment, negligence, and a lack of understanding of the role of counsel in discovery.

### B. Federal Rule of Civil Procedure 37

Rule 37 authorizes a court to impose sanctions against a party that fails to provide discovery as required by the Federal Rules of Civil Procedure.[8] As relevant here, Federal Rule of Civil Procedure 33 provides that,  "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Federal Rule of Civil Procedure 26(e) provides that "[a] party who … has responded to an interrogatory, request

---

[8] Rule 37 requires a party moving for an order to compel discovery to certify that he or she has in good faith conferred or attempted to confer with the person or party failing to make disclosure. Fed. R. Civ. P. 37(a)(1). Bracey is a prisoner proceeding *pro se*. Considering his lack of access to means of communication typically employed by counsel, the Court finds that Bracey's Motion for Extension of Time to Complete Discovery, ECF No. 148, Objections to Defendants Discovery Notice, ECF No. 151, and related correspondence satisfy this requirement and place Defendants on notice of potential incomplete and misleading responses that prompted Bracey to file the pending sanctions motion.

for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Thus, Rule 37 permits a court to impose sanctions where a party fails to disclose or supplement discovery as required by Rule 26(e). Rule 37(c) provides:

> (1) **Failure to Disclose or Supplement.** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i) – (vi).

Fed. R. Civ. P. 37(c). The "other appropriate sanctions" identified by Rule 37(b)(2)(A)(i) – (vi) include, in relevant part:

> i. Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> ii. Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; …
>
> vi. Rendering a default judgment against the disobedient party.

Fed. R. Civ. P. 37(b)(2)(A)(i), (ii), and (vi). "[S]anctions should not be awarded … if the failure to disclose or supplement was substantially justified. 'Substantial justification for the failure to make a required disclosure has been regarded as justification to a degree that could satisfy a reasonable

19

person that parties could differ as to whether the party was required to comply with the disclosure request.' The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance.' Further, 'a failure to disclose is considered harmless 'when there is no prejudice to the party entitled to disclosure.'" <u>Vay v. Huston</u>, No. 14-769, 2016 WL 1408116, at *5 (W.D. Pa. Apr. 11, 2016)(internal citations omitted).

### C.  Federal Rule of Civil Procedure 26(g)

Rule 26(g) provides a third source for sanctions, directed at attorneys who fail to perform basic obligations owed to their clients, parties, and the court. Rule 26(g) provides in relevant part:

(1) Signature Required; Effect of Signature. Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name…. By signing, an attorney or [unrepresented] party certifies that to the best of the person's knowledge, information, and belief formed after reasonable inquiry:

(A) with respect to a disclosure, it is complete and correct as of the time it is made; and

(B) with respect to a discovery request, response, or objection, it is:

   (i)    consistent with these rules and warranted by existing law …
   (ii)   not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
   (iii)  neither unreasonable not unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

(3) Sanction for Improper Certification. If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, cause by the violation.

Fed. R. Civ. P. 26(g). Thus, Rule 26(g) imposes an absolute obligation of reasonable inquiry on counsel, and requires imposing sanctions on either or both counsel and parties where discovery responses are unreasonable or otherwise inconsistent with the Federal Rules of Civil Procedure.

### D. Inherent Power of the Court

Sanctions under the court's inherent power may be imposed on counsel or parties who are found to have abused the judicial process and impeded "the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). "Inherent powers derive from the very nature of courts of justice.'" Id. (quoting In re Tutu Wells Contamination Litig., 120 F.3d 368, 383 (3d Cir. 1987), *overruled on other grounds by* Comuso v. Nat'l R.R. Passenger Corp., 267 F.3d 331 (3d Cir. 2001). "[…]Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Id. (quoting Chambers, 501 U.S. at 43).

As recognized by the United States Supreme Court in Chambers, neither the Federal Rules of Civil Procedure nor 28 U.S.C. § 1927 have displaced the court's inherent power. Chambers, 501 U.S. at 46. While these other sources of sanctions may reach parties or counsel and certain proscribed behavior, the Supreme Court has recognized that "the inherent power must continue to exist to fill in the interstices" where existing legislative or rule-based remedies fail to provide an adequate remedy. Id. The "preferred" course "is that when 'statutory or rules-based sanctions are entirely adequate, they should be invoked, rather than the inherent power.'" Clientron Corp. v. Devon IT, Inc., 894 F.3d 568, 577 (3d Cir. 2018) (quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 189 (3d Cir. 2002)). Thus, where no other remedy is available, "the Court, pursuant to its inherent powers, has the authority to impose just, non-monetary sanctions to ensure compliance with the Federal Rules of Civil Procedure, … and to protect the integrity of the judicial system." Spencer v. Steinman, No. 96-1792, 1999 WL 33957391, at *2 (E.D. Pa. Feb 26, 1999).

## III.   DISCUSSION

In a Section 1983 claim for excessive force, the "pivotal inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Ricks v. Shover, 891 F.3d 468, 480 (3d Cir. 2018) (quoting Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002)). Thus, information related to Defendants' participation in the incident, whether and why Defendants violated a separation order, and whether either Defendant was disciplined due to misconduct during the incident are plainly relevant to Bracey's claims. The facts developed through the pending sanctions motion and hearing reveal that Defendants and their counsel repeatedly interfered with Bracey's ability to gather this potentially adverse evidence. The interference manifested in evasive, incomplete, and inaccurate discovery responses that increased the cost and length of this litigation, and led to the issuance of Court orders that rested on false assertions of fact. Defendants' conduct was neither harmless nor substantially justified, and "but for plaintiff['s] persistence, [he] would have been at a substantial disadvantage" in pursuing his claims. Younes, 312 F.R.D. at 706; see also Bistrian v. Levi, No. 08-3010, 2022 WL 888878, at *8 (E.D. Pa. March 25, 2022).  Thus, the Court finds that sanctions are appropriate under Rules 26(g) and 37 of the Federal Rules of Civil Procedure.

### A.  Defendants Valencia and Colgan

In verified written discovery responses, Valencia denied participation in the escort, denied the existence of disciplinary proceedings arising from his misconduct, and joined Colgan in denying the existence of a separation order. The responses to Bracey's discovery requests were evasive, misleading, and constitute a failure to disclose or answer. See Fed. Rule Civ. P. 37(a)(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."). Defendants' failure to disclose the requested information in response to

22

Bracey's interrogatories was neither substantially justified nor harmless, and cannot be attributed to honest mistake.

Valencia states that his interrogatory response denying participation in the escort at issue results from a "fuzzy" memory. This post hoc explanation ignores his contemporaneous written statement providing specific details on the use force and his pursuit of a workers' compensation claim for an injury sustained in the incident. Also lacking credibility is Valencia's stilted interpretation of discovery requests seeking information related to "any discipline filed against you." At the sanctions hearing, Valencia testified  that he participated in a pre-disciplinary proceeding related to one aspect of the incident. At a minimum, this testimony is an acknowledgment that disciplinary proceedings were initiated against him and thus that his blanket denial in interrogatory answers was false when made.

In the same vein, Colgan's denial of a separation order after testifying to the contrary in the state court criminal proceedings strains credulity. The Court finds that both Defendants acted with willful intent to shirk their discovery obligations and that their failure to answer or supplement responses was not substantially justified by any objective measure. To that end, under the evidence presented, there is no genuine dispute regarding whether Defendants were required to candidly answer Bracey's interrogatories, or that sincere responses and supplemental responses would have led to the admission to relevant and critical facts. Thus, sanctions are warranted.

Turning to the nature of sanctions to be imposed pursuant to Rule 37(c), the Court finds that Bracey's *pro se* status renders insufficient the imposition of monetary sanctions for attorneys' fees incurred to challenge noncompliant discovery. Instead, the Court finds appropriate Bracey's request for an order precluding Defendants from introducing evidence or testimony challenging (1) that Valencia was present and participated in the escort; (2) that Colgan and Valencia were

subject to a prior separation order issued by Captain Crumb; and (3) that Valencia was disciplined for violating the separation order. These facts will be treated as established for purposes of trial. Further, pursuant to Rule 37(c)(1)(B), the Court will specifically instruct the jury of Defendants' failure to answer and supplement answers without evasion as to each of these facts.  Bracey also may use Defendants' inconsistent discovery responses and testimony for purposes of impeachment at time of trial.

> **B.  Attorneys Simkin and Gill**

Attorneys Simkin and Gill lay their failure to locate, identify, and produce relevant documents at the feet of a staff civil investigator, and further assert that certain documents were not produced because Bracey failed to frame his requests more broadly.  During their testimony, Attorneys Simkin and Gill failed to recognize their responsibilities as officers of the Court and failed to acknowledge their repeated negligent conduct in fulfilling those responsibilities. This is certainly troubling. Therefore, the Court finds it necessary to review for defense counsel the obligations of attorneys when conducting discovery. "Rule 26(g) requires all attorneys to engage in pretrial discovery in a responsible manner consistent with the spirit and purposes of liberal discovery. Pursuant to the Rule an attorney's signature certifies that any disclosures were complete and accurate at the time they were made and that a reasonable inquiry was made." Younes, 312 F.R.D. at 703 (internal citations omitted). "Rule  26(g) does not require perfection and does not impose an unreasonably high burden on litigants.  It simply requires that a reasonable inquiry be made into the factual basis of a discovery response and that responses to discovery be complete and correct when made." Id. at 706.

In Winner v. Etkin & Company, Inc., No. 07-903, 2008 WL 5429623 (W.D. Pa. Dec. 31, 2008), District Judge Terrence McVerry reviewed the role of counsel under the rule. "The 1983

Advisory Committee notes on Rule 26(g) explain that there is an 'affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purpose of the [Rules].'" Id. at *4. "[T]he signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Id. This obligation cannot be foisted on a subordinate or, as in this case, a nonlawyer. Thus, in Winner, sanctions in the form of related reasonable attorneys' fees were ordered after counsel made representations to the Court "that all responsive documents had already been provided[,]" when subsequent motions requiring judicial intervention revealed they had not. Id. at *5-6. Judge McVerry found that the plaintiff and his attorneys "had not engaged in sufficient oversight of the discovery process to ensure that the representations to the Court were accurate." Id. Despite counsel's concession that errors were made, the Court found counsel's failure was not substantially justified and could not be excused "by blaming the errors on his subordinates." Id. Similarly, reliance on a client's production efforts without follow-up inquiries as to the scope of a search is not adequate. "While an attorney need not supervise every aspect of a client's document production, the attorney is responsible for coordinating the client's discovery efforts so that responsive documents are located and produced." Younes, at 707.

In addition, the obligation to provide candid objections and identify responsive documents cannot be required to turn on the use of "'magic words' to obtain clearly relevant discovery." Id. at 709 (and quoting 8B Wright, Miller & Marcus, Fed. Practice and Procedure § 2177 (Answers to Interrogatories) (3d ed.) ("Interrogatories and production requests should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under subdivision (a) [of Rule 37].")). See also Bistrian v. Levi, 2022 WL 888878, at *8-9 (sanctions

25

imposed for government's failure to supplement Bureau of Prison discovery responses with investigation materials in the possession of the FBI "by impermissibly cabining its search to documents within the possession of the BOP …. The Federal Rules of Civil Procedure do not and should not require plaintiffs to use 'magic words' to obtain clearly relevant discovery.") (internal citations and quotation marks omitted).

In this case, counsel engaged in both forms of sanctionable conduct. Defense counsel testified that responses to discovery requests were based on a single conversation with Valencia and the unsupervised efforts of the assigned paraprofessional to coordinate document production and Colgan's interrogatory responses. Neither Simkin nor Gill contacted Colgan, the DOC, or SCI-Greene employees to ensure that employment records were complete, that the full incident investigation file was provided, or that the criminal proceedings referenced in Colgan's interrogatories were examined for possible responsive documents. There is no record of a search for electronically stored information such as emails and, if conducted, no evidence of search terms employed. When confronted with documents that had been withheld, counsel unapologetically sought to excuse their conduct with narrow, hypertechnical interpretations of Bracey's discovery requests. And when the investigation report was prepared for production on November 1, 2021, Attorney Gill did not review the redactions or, if he did, he breached his obligations under Rule 26(e) to supplement prior responses that denied the existence of a separation order and disciplinary proceedings.

The essence of the testimony and evidence reflects that both attorneys engaged in woefully inadequate performance of the most basic discovery obligations; conduct that is not substantially justified by the nature of the dispute or the scope and nature of the requests. The "wordsmithing"

that Attorneys Simkin and Gill engaged in at the sanctions hearing further evidences a lack of understanding of their responsibilities under the Federal Rules of Civil Procedure.

The failure to comply with the Rule 26(g) certification requirement was not harmless. This litigation has been delayed at least nine months to resolve ongoing discovery lapses and motions. Judicial resources have been unnecessarily allocated to resolve these disputes, and orders were entered based on false declarations by counsel and Defendants. The happenstance that at some unknown date, Bracey obtained contrary evidence in the criminal proceedings against him does not insulate defense counsel from their failure to make reasonable inquiry to ensure the completeness and accuracy of discovery responses in this civil action.

Finally, the Court must determine whether counsel's conduct was substantially justified. "The test of substantial justification is satisfied if there is a genuine dispute concerning compliance." Younes, 312 F.R.D. at 707 (citing Grider v. Keystone Health Plan Central, Inc., 580 F.3d 119, 140 n. 23 (3d Cir. 2000)). It is not disputed that the requisite reasonable inquiry *by counsel* never occurred and thus there can be no substantial justification for counsel's certification that "to the best of the [signer's] knowledge, information, and belief, formed after reasonable inquiry …with respect to a discovery request, response, or objection, it is … not interposed for any improper purpose …, and neither unreasonable nor unduly burdensome." Fed. R. Civ. P. 26(g)(1).

As to later produced documents, Attorney Gill's assertion of the deliberative process privilege to justify the redaction of factual material from investigation reports does not shelter counsel from sanctions. The deliberative process has limited application where no policy change is under consideration or pursued, and no recommendations for procedural changes are at issue. See Reid v. Cumberland Cnty., 34 F. Supp. 3d 396, 410 (D.N.J. 2013) (citing Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 853 (3d Cir. 1995) ("The deliberative process

privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'")). Thus, the court in <u>Reid</u> found that in Section 1983 cases, the deliberative process privilege applies in the limited situation when the documents at issue contribute to the formulation of important public policy or new law. <u>Id.</u> (citing <u>Charles v. City of New York</u>, No. 11–cv–0980, 2011 WL 5838478, at *2 (E.D.N.Y. Nov. 18, 2011) ("in a 42 U.S.C. § 1983 case that the deliberative process privilege did not apply to an internal affairs bureau investigative report and a supervisor's case review memo because the documents contained only factual and investigative information and because 'the documents were not created to assist a governmental agency in the formulation of a specific decision on policy,' but rather for the 'routine process to determine whether disciplinary action was warranted against the defendant officers ...'")). <u>Cf.</u> <u>Bayliss v. New Jersey State Police</u>, 622 F. App'x 182, 185-6 (3d Cir. 2015) (deliberative process privilege may apply to "Review Sheets" that record supervisory recommendations for discipline, but not to factual material not previously disclosed to the parties).

In this case, the redactions from the investigation report include recommended disciplinary charges *and the facts on which the charges are based*. <u>See</u> ECF No. 207 (Exhibit 4 at 00286) ("Ofr. Valencia disregarded an order from the RHU Commander to have no direct contract with an Inmate"); (Exhibit 4 at 00287) ("Ofcr. Valencia was given direction for no direct contact with an Inmate, failed to follow this direction and should have known of the potential risk of opening the cell door"). Because these facts are readily separated from the recommendations, the redactions are not substantially justified by the deliberative process privilege, or on any basis, given that counsel previously denied the existence of a separation order and disciplinary proceedings, and upon review of the investigation report, failed to supplement prior incorrect responses as required by Rule 26(e).

28

Based on defense counsels' violations of Rule 26(g) as set forth above, sanctions are appropriate. In determining sanctions, the Court reiterates its conclusion that counsel did not act in bad faith; however, bad faith is not required for the imposition of sanctions under Rule 26. Winner, at *5 (citing GMAC Bank v. HTFC Corp., 252 F.R.D. 253 (E.D. Pa. 2008)); see also Grider, 580 F.3d at 139 (sanctions may be imposed if noncompliance with certification requirement is without substantial justification).

The Court imposes the following sanctions relative to the conduct of Attorneys Simkin and Gill. First, within seven (7) days of this date Defendants are to hand deliver to Bracey copies of all documents filed on the docket of this matter that relate to Defendants Valencia and Colgan, including all discovery motions, responses, and exhibits thereto. Second, within thirty (30) days of this date, Defendants are to provide to Bracey for deposit into his inmate account the sum of $50.00 to reimburse him for postage, paper, envelopes, and other costs associated with the filing of the discovery motions at issue. Third, Attorney Gill and Attorney Simkin are required to attend twelve (12) hours of Continuing Legal Education ("CLE") certified by the Supreme Court of Pennsylvania through the Continuing Legal Education Board. Eight credit hours shall be in the areas of discovery obligations and discovery procedures, and four credit hours shall be in the ethical obligations of counsel in the course of litigation. Counsel shall complete the required credits no later than December 31, 2022, and shall file a notice thereof on the docket of this matter by January 6, 2023, listing the date and title of each CLE program attended and the hour(s) of credit earned. See Martin v. Brown, 151 F.R.D. 580, 591 (W.D. Pa. 1993) (imposing continuing legal

education as a sanction under Rule 11 for failure to investigate claims against certain named defendants).[9]

Attorneys Simkin and Gill are further advised that should they continue to engage in the type of conduct addressed herein in this case or any other case, they may be subject to further and/or heightened sanctions.

Finally, this Court does not take lightly the imposition of sanctions. However, the negligent conduct, lack of candor to the Court, and lack of acceptance of responsibility by Attorneys Simkin and Gill is most concerning. The Court hopes that defense counsel will learn from this situation and their conduct will not be repeated.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Sanctions, ECF No. 177, is GRANTED. The Court finds that Defendants Valencia and Colgan violated Rules 37(a)(4) by willfully providing evasive, incomplete, and inaccurate responses to interrogatories. The Court further finds that counsel Simkin and Gill violated the certification requirements of Rule 26(g). Accordingly, sanctions are properly awarded. An appropriate Order follows.

## ORDER

Upon consideration of the Motion for Sanctions filed by Plaintiff Corey Bracey, ECF No. 177, and the briefs and exhibits filed in support and in opposition to the motion, ECF Nos. 180, 182, 183, and 184, the testimony presented at the hearing of this matter, and the supplemental submissions ordered by the Court for *in camera* review,  IT IS HEREBY ORDERED this 18th day of May 2022, that the motion is GRANTED.

---

[9]Consideration was given to the issuance of public reprimand or the submission of a complaint to the Pennsylvania Disciplinary Board; however, the Court determined that the most constructive approach to remedy the conduct of defense counsel is to mandate the tailored CLE identified above.

IT IS FURTHER ORDERED that sanctions are imposed on Defendants Corey Valencia and Christopher Colgan and counsel Sarah J. Simkin and Matthew C. Gill as follows:

(1) At the trial of this matter, the following facts shall be deemed stipulated to by the parties:

    a. On September 8, 2017, by order of the Restricted Housing Unit Commander, a separation order was in place forbidding Defendants Corey Valencia and Christopher Colgan from any contact with Plaintiff Corey Bracey.

    b. Defendants Corey Valencia and Christopher Colgan violated that order on October 17, 2017.

    c. After an investigation of the incident at issue here, the Department of Corrections launched disciplinary proceedings against Defendant Corey Valencia and concluded that he violated a direct order forbidding contact with Plaintiff Corey Bracey and violated post orders requiring a prisoner in Plaintiff's security classification to be searched and handcuffed prior to opening a cell door. The disciplinary proceedings resulted in a three-day suspension. The suspension was not served because Defendant Valencia never returned to work after the incident at issue.

    d. Defendants Valencia and Colgan failed to disclose these facts to Plaintiff as required when asked during the discovery phase of this litigation.

(2) Attorneys Simkin and Gill shall:

    a. within seven (7) days of the date of this order, arrange for and certify the hand delivery to Bracey copies of all documents filed on the docket of this matter that relate to Defendants Valencia and Colgan, including all discovery motions and exhibits thereto;

b.  within thirty (30) days of the date of this order, provide to Bracey for deposit into his inmate account the sum of $50.00 to reimburse him for postage, paper, envelopes, and other costs associated with the filing of the discovery motions at issue; and,

c.  attend 12 hours of Continuing Legal Education ("CLE") certified by the Supreme Court of Pennsylvania through the Continuing Legal Education Board. Eight credit hours shall be in the areas of discovery obligations and discovery procedures, and four credit hours shall be in the area of ethical obligations in the course of litigation. Counsel shall complete the required credits no later than December 31, 2022, and shall file a notice as thereof on the docket of this matter by January 6, 2023, listing the date and title of each CLE program attended and the hour(s) of credit earned.

IT IS FURTHER ORDERED that in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of this Order to file an appeal to the District Judge which includes the basis for objection to this Order. Any appeal is to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to file a timely appeal will constitute a waiver of any appellate rights.

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     The Honorable William S. Stickman
        United States District Judge

32

Corey Bracey
GS 4754
SCI Phoenix
1200 Mokychic Road
Collegeville, Pa 19426

All counsel of record via CM/ECF

## APPENDIX A

### IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA
### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,    )
    )
        -vs-        )  No. 14, Criminal, 2018
    )
COREY BRACEY,    )
    )
        Defendant.    )

### O R D E R

AND NOW, this 28th day of March, 2022, this is the time and place that has been set for a status conference, and the Court has also referred to this matter as a hearing. Ms. Warshafsky has appeared by advanced communication technology.  She is the attorney for the Department of Corrections.  The Court has familiarity with Ms. Warshafsky from her prior appearances in Court and primarily when she was of counsel with the Attorney General's Office.

The Court has always found Ms. Warshafsky to be forthright in her dealings, and we have had improving communication and cooperation, to the extent that Ms. Warshafsky is able, with the Department of Corrections since Ms. Warshafsky's appearance.  We also have Mr. Nicklow who is the deputy superintendent at SCI Camp Hill, the facility where Mr. Bracey is now incarcerated.  Finally, we have Mr. Bracey who has also appeared by advanced

IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,      )
                                   )
          -vs-                     )  No. 14, Criminal, 2018
                                   )
COREY BRACEY,                      )
                                   )
          Defendant.              )

O R D E R

AND NOW, this 28th day of March, 2022, this is the time and place that has been set for a status conference, and the Court has also referred to this matter as a hearing. Ms. Warshafsky has appeared by advanced communication technology.  She is the attorney for the Department of Corrections.  The Court has familiarity with Ms. Warshafsky from her prior appearances in Court and primarily when she was of counsel with the Attorney General's Office.

The Court has always found Ms. Warshafsky to be forthright in her dealings, and we have had improving communication and cooperation, to the extent that Ms. Warshafsky is able, with the Department of Corrections since Ms. Warshafsky's appearance.  We also have Mr. Nicklow who is the deputy superintendent at SCI Camp Hill, the facility where Mr. Bracey is now incarcerated.  Finally, we have Mr. Bracey who has also appeared by advanced

communication technology.  The standby counsel, Gary
Graminski, is also present.  This case is one of the oldest
cases on the criminal docket list, and there have been
continuing issues with the Defendant seeking discovery,
primarily focusing on mental health records which the Court
is convinced are necessary for the Defendant to determine
the viability and use of any mental health defense, to
include justification or diminished capacity as a result of
what the law defines as insanity or other mental health
issues.

THIRTEENTH JUDICIAL DISTRICT OF PENNSYLVANIA

The record is replete with efforts by the Court
in its attempt to satisfy the discovery requests.  We
recognize the situation that the local District Attorney is
not in possession of all material that has been requested.
The Court is aware of a Court Order of December 22, 2021
which directed SCI Camp Hill to provide all legal and
medical documentation belonging to the Defendant and to do
that within ten days of December 22, 2021.

We do recognize the notion that Ms. Warshafsky
indicates that she as the attorney for the Department of
Corrections did not receive notice, however, the rules of
discovery require the Commonwealth to provide discovery for
any information in its possession or any information that is
in control of the prosecutor in this case.  Therefore,
notice of the emergency Order that was signed by the Court

was provided to the local District Attorney's Office.

The Court does not dispute nor does any party
seem to dispute that Mr. Bracey has been diagnosed with and
continues to suffer from a mental health diagnosis.  The
Court cannot impose its will upon the Department of
Corrections in directing the custodial circumstances of
Mr. Bracey as that is not a power granted to the Court.  We
do recognize the security concerns that surround providing
information in discovery.  A review of various Orders would
suggest the Court's sensitivity to those issues, and we have
done our best to provide only material relevant to
Mr. Bracey's case, and we have entered Orders that have
denied certain requests by the Defendant somewhat in
deference to security concerns of the Commonwealth.

Mr. Bracey in appearing this date indicates that
he had filed a grievance stating that the institution had
not complied with the Court's Order of December 22, 2021
giving legal and medical documents to the Defendant.  The
Court is entering a lengthy Order this date and would also
advise that the Court has done its best to recite in Open
Court the Court's recollection of efforts that have been
made by the Defendant to seek discovery, and also have
generally noted the response of the Department of
Corrections whereby they indicate that records have been
lost or otherwise not available, or the providing of those

documents create security risks.

Although we are unable and certainly have no desire to direct the Department of Corrections with regard to the Defendant's circumstances of incarceration or his circumstances of the possession of certain materials, we though are unable to effectively direct the discovery material be provided as there have been continuing responses by the Commonwealth that have failed to advance this case to trial. We are uncertain nor have we made any inquiry as to whether Mr. Bracey remains incarcerated in lieu of bail that has been set in this case, or if he in fact remains incarcerated on some other event, although his circumstances of continuing incarceration within the Department of Corrections would suggest that the Defendant is still under a current sentence.

In an effort to obtain the discovery and to gather the Defendant's documentary evidence of the Defendant's mental health conditions, the Defendant pursued the grievance process within the Department of Corrections in an effort to ensure compliance with the Court's Order of December 22, 2021. We are now aware that the facilities manager has responded to the Court's Order of December 22, 2021, essentially indicating that the Court DIRECTED that all medical records belonging to the Defendant be provided to the Defendant, however, the facilities manager responded

in writing to Mr. Bracey that the Court did not direct that medical records belonging to the Department of Corrections be provided to the Defendant.

It is this type of response that culminates in this Court's dismissal of the action at the above number and term.  We base our authority on the Rules of Criminal Procedure related to discovery Rule 573, and particularly, subsection E regarding remedy.  The Court has considered less extreme action, however, given the entire posture of the case and the efforts that both the Defendant and the Court have made, and the responses that have been received related to discovery, the Court determines that no other remedy is appropriate.

Again, the matter is now DISMISSED.  The Commonwealth is granted 30 days from this date in which to pursue an appeal if it believes it to be appropriate. Finally, it should be noted that the Court has gone to great efforts to ensure that discovery be received and that Orders be complied with, again, taking note of the circumstances of the Defendant's incarceration issues related to security and issues that arise as a result of bureaucracy.

Finally, we do recognize that a mental health expert has been provided at the expense of the Court, that a mental health evaluation has been returned by Dr. Michael Crabtree, and we seem to recall that that mental health

evaluation suggests that critical records were missing and
not provided by the Department of Corrections, thus
hampering the ability of the evaluator to have all
information before it.

By this Order, the matter is now DISMISSED.
Mr. Bracey is DIRECTED to if it is within his ability send a
written copy of the grievance response read into the record
to the Court, which shall be docketed with the Court.  It
was though read into the record this date by Mr. Bracey.
SO ORDERED AND DECREED.

ATTEST:                              BY THE COURT:


_____            _____
CLERK OF COURTS                      LOUIS DAYICH, PRESIDENT JUDGE
                                     DATE: 3 - 29 - 2022