IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COREY BRACEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>)<br>COREY VALENCIA; CHRISTOPHER )<br>COLGAN and LIEUTENANT MORRIS, )<br>)<br>Defendants. ) | Civil Action No. 19-1385<br>District Judge William S. Stickman<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 188 |

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

Corey Bracey ("Plaintiff") filed this *pro se* civil rights action under 42 U.S.C. § 1983, and asserts claims against various Pennsylvania Department of Corrections medical contractors, supervisors, and employees for injuries allegedly sustained during his incarceration at the State Correctional Institution at Greene ("SCI-Greene"). As relevant to the pending motion, Plaintiff asserts claims against Defendants Corey Valencia ("Valencia") for the violation of his rights under the Eighth and Fourteenth Amendments and for civil conspiracy, and against Lieutenant Morris ("Morris") and Christopher Colgan ("Colgan") (collectively, the "Corrections Defendants"), for the violation of his Eighth Amendment rights and for civil conspiracy. ECF No. 107 ¶¶ 54 and 55.

Pending before the Court is a Motion for Partial Summary Judgment filed on behalf of the Corrections Defendants seeking the entry of judgment as a matter of law as to all claims asserted against Defendant Morris due to Plaintiff's failure to exhaust his administrative remedies. ECF No. 188. For the reasons that follow, it is respectfully recommended that the Corrections Defendants' Motion for Partial Summary Judgment, ECF No. 188, be denied.

II.     REPORT

    A.     FACTUAL AND PROCEDURAL BACKGROUND

        1. The Incident at Issue

Plaintiff alleges that on October 17, 2017, Corrections Officers Valencia and Colgan violated a separation order in place as of September 8, 2017. The separation order expressly directed both Defendants not to have contact with Plaintiff due to an ongoing investigation of Plaintiff's complaints of abuse by them. ECF No. 107 ¶¶ 12–21; ECF No. 183 at 4. On the day of the incident, Valencia and Colgan allegedly violated the order and manufactured a situation to justify the use of force against Plaintiff. Plaintiff states that out of fear, he suffered a "mental health episode" when Valencia entered his cell to exchange cell property. After Plaintiff "blacked out and exited the cell," Valencia and other responding officers, including Colgan, "punched and applied knee strikes to Plaintiff's head" and employed capsicum spray. Plaintiff concedes that he bit one of the responding officers during the altercation. Once restrained, Plaintiff offered no resistance and he was shackled and handcuffed with his hands behind his back. At that point, Valencia and Colgan punched Plaintiff repeatedly in the head and face. ECF No. 107 ¶ 29.

Plaintiff alleges that Morris, acting in his supervisory capacity, ordered Plaintiff to be escorted to the medical unit for treatment. Morris directed that during the escort, Plaintiff was to be shackled, handcuffed, placed in a spit hood, bent over, and made to walk backwards. Plaintiff states that he offered no resistance but nonetheless Colgan and Valencia instructed him to "stop resisting" and repeatedly drove his head into the concrete floor. Defendants also punched Plaintiff in the face several times. Later, Plaintiff alleges Defendants "fabricated their incident reports" stating that Plaintiff resisted the escort and force was necessary to gain compliance. Id. ¶¶ 30–37; see also ECF No. 177 at 2.

### 2. Plaintiff's Grievance

On October 24, 2017, Plaintiff filed a timely grievance regarding the incident. ECF No. 189-2 at 6, 31; ECF No. 191 ("Inmate Grievance, No. 703339"). In his grievance, Plaintiff wrote "[t]his is a formal 'Abuse Allegation' [ ] pursuant to the provisions of DC-ADM 001 alleging the excessive use of force . . . ." Id. Plaintiff named or identified various staff members in his grievance, including Valencia and Colgan. However, Plaintiff did not name or otherwise identify Defendant Morris, nor did he include any allegations of misconduct related to him. Id.

On October 25, 2017, the Facility Grievance Coordinator notified Plaintiff that in accordance with DC-ADM 001, an extension of time was necessary to respond to the grievance to appropriately investigate Plaintiff's allegations of abuse. ECF No. 189-2 at 5. During the investigation, Plaintiff and each of the Defendants, including Morris, were interviewed, as were several other DOC employees who witnessed or participated in securing Plaintiff during the incident. Id. at 7-10. Plaintiff reiterated his claims that Valencia and Colgan employed excessive and unwarranted force but he did not identify or implicate Morris as a participant or lodge any complaints regarding the way Morris directed his escort to triage. Id. at 8-9. Upon the conclusion of the investigation in February 2018 and after the administrative review of the findings, Plaintiff's grievance was denied as not substantiated.[1] Id. at 4. Plaintiff timely appealed the grievance denial to the Facility Manager, and the initial response to the grievance was upheld. Id. at 2-3. Plaintiff filed a Final Appeal to the DOC Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), and on May 18, 2018, the DOC Chief Grievance Officer denied Plaintiff's appeal. Id. at 1.

---

[1] The investigator reviewed video footage and photos of the bite injury sustained by Corrections Officer Kuzma and determined that the use of force was justified. Id. at 12.

3

### 3. Relevant Procedural History

On October 24, 2019, Plaintiff initiated this action by lodging a Complaint. ECF No. 1. Upon curing deficiencies regarding his *in forma pauperis* ("*IFP*") status, the Complaint was docketed on January 3, 2020. ECF No. 8. Plaintiff did not name Morris or Colgan as defendants, nor did he assert a cause of action for conspiracy. Id.

On April 1, 2020, Plaintiff filed an Amended Complaint and included excessive force and conspiracy claims against Morris and Colgan. ECF No. 39. Upon the disposition of Motions to Dismiss filed on behalf of the medical defendants and the Corrections Defendants, Plaintiff was granted leave to file a Second Amended Complaint. ECF No. 106. Plaintiff filed the operative Second Amended Complaint on November 30, 2020, and restated his claims against Valencia, Colgan, and Morris for excessive use of force and conspiracy. ECF No. 107.

Upon the conclusion of fact discovery, the Corrections Defendants filed a Motion for Partial Summary Judgment, Concise Statement of Material Facts with exhibits, and their brief in support of the motion. ECF Nos. 188-191. The Corrections Defendants contend that Plaintiff's failure to identify Morris in his grievance constitutes a failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. ECF Nos. 188 and 190. Accordingly, the Corrections Defendants argue that Plaintiff's claims against Morris are procedurally defaulted and, thus, entry of judgment in Morris's favor as a matter of law is warranted. ECF No. 190. Plaintiff filed his response in opposition, ECF No. 203, and Corrections Defendants filed their reply, ECF No. 208. The Motion for Partial Summary Judgment is ripe for consideration.

B.    STANDARD OF REVIEW

1. Motion for Partial Summary Judgment

The Court may grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof or that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

Once the movant meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Celotex Corp., 477 U.S. at 323–25. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in pleadings. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or make credibility determinations, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Reeves v. Sanderson

Plumbing Prods. Inc., 530 U.S. 133, 150–51 (2000) (citing decisions); Anderson, 477 U.S. at 248–49; Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 288 (3d Cir. 2018).

### 2. *Pro Se* Pleadings and Filings

*Pro se* pleadings and filings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner ... may be inartfully drawn and should ... be read 'with a measure of tolerance'"); Freeman v. Dep't of Corr., 949 F.2d 360 (10th Cir. 1991).

When considering a motion for summary judgment, however, the traditional flexibility toward *pro se* pleadings does not require the court to indulge evidentiary deficiencies. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 249 (3d Cir. 2013) (citing Brooks v. Kyler, 204 F.3d 102, 108 n.7 (3d Cir. 2000)). Accordingly, because Plaintiff is a *pro se* litigant, the Court will consider the facts and make inferences as appropriate.

C.     DISCUSSION

1. PLRA Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). The United States Court of Appeals for the Third Circuit has explained that the PLRA's exhaustion requirement serves the following Congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004). Thus, as the statute's language makes clear, the exhaustion requirement is mandatory and applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Woodford v. Ngo, 584 U.S. 81, 85 (2006).

The exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. at 84. Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted. Id. at 90; Spruill, 372 F.3d at 227-32; Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153 (3d Cir. 2016). In assessing default, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

The Pennsylvania Department of Corrections' ("DOC") administrative remedies for inmate grievances are provided for in DOC Administrative Directive 804 ("DC-ADM 804"). See

www.cor.state.pa.us, DOC Policies, DC-ADM 804, Inmate Grievance System Policy. DC-ADM 804 provides a three-step process through which inmates can seek to resolve issues relating to their incarceration. Id. The three steps are: (1) file an initial grievance; (2) appeal to the superintendent; and (3) final appeal to the Secretary's Office of Inmate Grievance Appeals ("SOIGA"). Redshaw v. Pillai, No. 12-190J, 2013 WL 3802464, at *3 (W.D. Pa. July 18, 2013). An inmate must follow each of the steps to properly exhaust his administrative remedies under the PLRA. See Booth v. Churner, 206 F.3d 289, 299 (3d Cir. 2000), aff'd, 532 U.S. 731(2001) (holding that plaintiff "did not take full advantage of the administrative procedures available to him" in failing to use steps two and three of DC-ADM 804).

In addition, the version of DC-ADM 804 that has been in effect since February 2016 provides that inmates "shall" identify individuals directly involved in the grievance. Victor v. Burns, No. 2:17-cv-984, 2018 WL 9617254, at *2 (W.D. Pa. May 23, 2018) (citing DC-ADM 804 1.A.11.b). "[A]lthough the exact language of DC-ADM has varied over the years the uniform requirement that the inmate include a statement of 'the facts relevant to the claim,' DC ADM 804 § 1.A.11[] has been interpreted to require the inmate to identify in the initial grievance the persons he eventually names as defendant in his complaint." Id. (citing Spruill, 372 F.3d at 234; Williams v. Pa., Dep't of Corr., 146 F. App'x 554, 557 (3d Cir. 2005) ("[plaintiff's] failure to identify defendants ... means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA."); Young v. Beard, No. 06-160, 2008 WL 2693860, at *4 (W.D. Pa. April 4, 2008), report & recommendation adopted as modified, 2008 WL 2693859 (W.D. Pa. June 30, 2008) (inmate failed to exhaust claims as to all defendants except the two named in the initial grievance).

In the present case, Plaintiff timely completed all required steps of DC-ADM 804 for Grievance No. 703339, including the three-step appeal process. ECF No. 189-2 at 1-6. However, at the time he submitted his grievance, Plaintiff failed to identify or describe Defendant Morris and did not raise any allegations regarding Defendant Morris's conduct. Thus, in the absence of any recognized exception, Plaintiff's failure to exhaust his claims against Morris warrants the entry of judgment in Morris's favor as a matter of law. Ghana v. Holland, 226 F.3d 175, 184 (3d Cir. 2000) (an inmate who fails to exhaust available administrative remedies is subsequently barred from litigating that claim in federal court).

In response to Corrections Defendants' Motion for Partial Summary Judgment, Plaintiff contends that his claims are not procedurally defaulted because he submitted his complaint pursuant to DC-ADM 001. To that end, Plaintiff asserts: (1) the requirements of DC-ADM 001 do not require that specific actors, causes of action, or forms of relief be identified; and (2) Plaintiff could not name Defendant Morris until he received Corrections Defendants' discovery responses, due to the circumstances of the at-issue incident, when he "blacked out," and thus did not see or could not identify the participants. ECF No. 203.

As to Plaintiff's first argument, the Third Circuit "has not considered whether a Pennsylvania prisoner can exhaust his administrative remedies through DC-ADM 001, nor what steps would be necessary under that procedure." Victor v. Lawler, 565 F. App'x 126, 129 (3d Cir. 2014). However, many District Courts in Pennsylvania have found that allegations of abuse do not have to be filed through DC-ADM 804 and thus have assumed DC-ADM 001 to be an alternative to DC-ADM 804. Pirl v. Ringling, No. 19-208J, No. 2021 WL 1964461, at * 11 (Mar. 29, 2021) (collecting cases). As such, absent DOC instructions regarding exhaustion under DC-ADM 001,

9

Plaintiff's clear reference to the policy to report the incident may suffice as to all identified and unidentified participants.

That said, the 2017 version of DC-ADM 001 "Inmate Abuse Policy" provides four avenues to report abuse allegations, including a grievance pursuant to DC-ADM 804.[2] Plaintiff opted to file a grievance, and adhered to all appeal requirements. Therefore, his failure to identify Morris could be considered default under applicable grievance process rules unless otherwise excused. In this case, because the prison acknowledged and investigated Morris's participation in the incident, the Court finds Plaintiff's failure to identify Morris in the grievance excused.

The Third Circuit has explained that "[t]he purpose of the stringent standard of proper exhaustion is to alert the prison officials to a problem and allow the officials to remedy the problem before it is litigated in court." Chaney v. Bednard, No. 1:19-0005, 2020 WL 7864202, at * 5 (W.D. Pa. Dec. 21, 2020) (citing Williams v. Beard, 482 F.3d 637, 640 (3d Cir. 2007)). Thus, procedural default can be excused by the prison "if prison administrators respond to the grievance 'by identifying the unidentified persons and acknowledging that they were fairly within the compass of the prisoner's grievance.'" Id. (quoting Spruill, 372 F.3d at 234-35). In addition, "[a] plaintiff's failure to identify individuals in his grievance also may be excused where the prison conducts an internal investigation and relies upon that investigation in its grievance response." Id. (citing Martin v. Secretary of Corrections, 2018 WL 1158250 (M.D. Pa. Mar. 5, 2018) (defendants filed reports that identified themselves as participants in the incident, thereby placing the prison was on notice of the individuals allegedly involved)).

In this case, the Corrections Defendants' exhibits in support of the pending motion contain a copy of the investigation report and written statements by the participants and witnesses, and

---

[2] See https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/2017%20DOC%20Inmate%20Handbook.pdf

10

include a statement made by Morris on the day of the incident. ECF No. 189-2 at 8-12, 74. The record also includes the internal prison investigation of the incident dated November 20, 2017, that led to a finding that Morris violated prison policy.

> During escort, Lt. Morris directs staff to bend the inmate over at the waist for the escort. This inmate was equipped with a spit mask, handcuffed and shackled. The inmate complains that he cannot breathe and then the escort stops. The inmate and staff then go to the ground. The spit mask is then removed. Staff and the inmate return to the ground on two more occasions during the escort to the medical triage area. <u>The direction to bend the inmate over at the waist and reverse escort was counterproductive for staff and inmate safety. The inmate was secured and posed little risk to escorting staff. The spit mask should have been kept in place and he should have been escorted via policy directed escort procedures. The act of bending an inmate over as (*sic*) his waist and making him walk backwards should be reserved for actively aggressive/combative inmates. Actively is defined as in the moment.</u> **Captain Crumb to counsel Lt. Morris regarding escorting procedures.**

ECF No. 183-3 at 2 (emphasis and underscoring in original). Whether Lt. Morris's policy violation amounts to a violation of Plaintiff's Eighth Amendment rights is not now before the Court. However, it is clear that the prison was on notice within one month of the incident that Morris was involved and that his violation of prison policy may have been a contributing factor.

"Again, '[t]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" <u>Chaney</u>, at *6 (quoting <u>Williams v. Beard</u>, 482 F.3d at 640). That goal is satisfied here and, therefore, it is recommended that the Motion for Partial Summary Judgment be denied.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Corrections Defendants' Motion for Partial Summary Judgment, ECF No. 188, be denied as to all claims asserted against Defendant Morris.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

*/s/ Maureen P. Kelly*
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: August 10, 2022

cc: The Honorable William S. Stickman
United States District Judge

All counsel of record via CM/ECF

COREY BRACEY
S.C.I. Phoenix
1200 Mokychic Road
Collegeville, PA 19426